Shauck, J.
The appropriation act, whose validity is called in question, was passed at the present session of the general assembly. The general assembly convened on the first Monday of January, 1911, pursuant to Section 35 of the General Code as amended April 22, 1910, so as to provide that “The regular session of the general assembly shall commence on the first Monday of January following the election of its members.” The members had been elected at the general election in November, 1910. The session was not called by the governor. It is said that the appropriation act is invalid because the session is irregular, being convened at a date forbidden by the constitution. Section 35 of the General Code is said to be repugnant to Section 25, Article II of the constitution, which' provides that “All regular sessions of the general assembly shall commence on the first Monday of January biennially. The first session under this constitution shall commence on the first Monday of January one thousand eight hundred and fifty-two.” This section of the constitution has not been expressly changed or superseded by any amendment of the instrument, though on behalf of the relator it is said to have been amended and the act fixing the first Monday in January of the present year for the convening of the general assembly authorized, by the Seventeenth Article of the constitution, adopted in 1905. That article was adopted as an amendment to the constitution without designating the sections of *434 the instrument which were to be amended or superseded. Section 2 of the schedule of the constitution of 1851 provided that the first election for members of the general assembly should be held on the first Tuesday of November, one thousand eight hundred and fifty-one. Section 2 of the Second Article required that senators and representatives should be elected biennially on the first Tuesday after the first Monday in November, and that their terms of office should commence on the first day of January next thereafter, and continue two years. The Seventeenth Article adopted in 1905, provides for the election of the senators and members on the first Tuesday after the first Monday in November in the even numbered years. From the peculiar mode of making this amendment, it results that except as to the time for the election its effect upon other provisions of the constitution must be determined by the rules, which have been adopted to ascertain and give effect to the latest expression of the intention of those whose intention is entitled to govern, in whatever form it may be expressed. Counsel for the defendant insist that the provisions already referred to are so clear in their effect to require the regular sessions of the general assembly to convene on the first Monday of January of the even numbered years that there is no opportunity for interpretation. They do not, however, deny that to ascertain the meaning of the words and phrases regard should be had to the entire instrument in which they are used. A constitution being an instrument locating the powers of government and defining the modes of their exercise, thus establish *435 ing and providing for the maintenance of a system of government, its interpretation as an entirety becomes a duty obviously incumbent upon the courts. The occasions for the more comprehensive view are more frequent in the interpretation of constitutions than in interpretation of other instruments. In the present case the duty of considering all related provisions is made more difficult by the fact that the Seventeenth Article is silent with respect to the numbers of the sections of the amended instrument which are to be effected by it. It does not even designate the section which it supersedes by its express terms. It is, therefore, as if it were written therein in express terms that all provisions of the constitution inconsistent with this expression of the will of the electors shall be regarded as amended or abrogated to the extent that may be necessary to give it full effect, which is the familiar rule for amendments and repeals by implication. Counsel for the defendant concede that the former provision for the election of members in the odd numbered years is so palpably inconsistent with the terms of the amendment that they shall be elected in the even numbered years that it must he regarded as amended by implication. But they deny. that the amendment affects any other provision involved in this inquiry, and they ask us to conclude that whatever inconvenience or embarrassment might result from postponing the session of the general assembly until fourteen months after the election of its members must be suffered in deference to the terms of the section referred to fixing the initial election for the biennial period in an odd numbered year. Con *436 siderate attention is due to this suggestion, for no time in our history has afforded more solemn admonitions than the present that the plain provisions of the organic law should not be violated from considerations of convenience or mere caprice, and that the scheme of government devised with so much care and wisdom should not be changed except upon due deliberation and in the mode appointed for that purpose.
But is there not expressed in the scheme of government set up by the constitution of 1851 such a relation between the dates of the election of members and their regular session that the former 'date having been admittedly changed by the express terms of the Seventeenth Article, the latter should be regarded as changed to give full effect to the latest expression of the controlling intention? It was ordained by the constitution that the members should be elected in the odd numbered years, and that their regular session should convene on the first Monday of the January next following. It is ordained by the Seventeenth Article that their election shall be in the even numbered years and by the Thirty-fifth Section of the General Code that they shall convene on the first Monday of January next following. It is true that upon the former occasion to meet the exigencies arising from the fact that the plan of government devised by the constitution was then being put into operation, precise dates were employed to fix the beginning of the biennial period, which was the chief object of the provision, and likewise to fix the dates of the election of the members and their convening in session, the relation being pre *437 cisely the same as that now fixed by the amendment and by the statute. Will a reverent believer in the sacredness of the constitution assert that an obviously intended relation of substance should be sacrified to a mere form of expression? Attention to other provisions of the constitution will show the very grave importance which must be attached to the relation of the dates of election and convening. It results from the provisions of the Second Article of the constitution that the official terms of senators and representatives must begin on the first day of January after their election, and neither house can exercise its power to determine the election and qualification of its members until it is convened and organized. Another consideration seems to be entirely conclusive of the question presented. The Seventeenth Article requires that the executive officers of the state be elected in November ,of the even numbered years, the Second Section of the Third Article provides that their terms of office shall commence on the second Monday of January next after their election, and Section 3 of Article III that the returns of their election, having been transmitted to the president of the senate, shall during the first week of the session be opened and published and the result declared “in the presence of a majority of the members of each house.” These sections relate to the orderly conduct of the government of the state, and they imperatively and expressly required the general assembly to be in session during the first week of the present year.
By what authority should the general assembly have been convened, if not by the authority of the *438 constitution and the statute already quoted? The constitution recognizes only regular and _ extraordinary sessions. The suggestion 'that the session should have been called by the governor will not bear scrutiny. The occasion, as we have seen, was created by express provisions of the constitution under whose operation like occasions will recur in the first week of every odd numbered year, so long as the present provisions remain unchanged. The authority of the governor to convene the general assembly by proclamation is conferred by the Eighth Section of the Third Article, and by its terms the authority is expressly limited to extraordinary occasions.” We should pay no sincere deference to the constitution or to the plain meaning of its terms if we should hold those occasions to be extraordinary for whose unfailing return at regular intervals the constitution makes elaborate apd careful provisions. In many respects constitutions do not execute themselves, and the enactment of Section 35 of the General Code pursuant to whose provisions the legislature convened in regular session was a wise precaution to avoid doubts that might have arisen but for its enactment. It may have been unnecessary, but we perceive no warrant whatever for saying that it is unconstitutional.
An objection to the conclusion intimated is of so much apparent force that it may be entitled to brief attention. It is said that the electors of the state have expressed their opinion against the conclusion intimated and against the change of the regular session to the first Monday of January in the odd numbered years, because in the years *439 1889 and 1906 amendments were submitted providing for that change, and in each instance the amendment failed for want of a sufficient affirmative vote. Many considerations would mitigate the force- of this objection. . If we might assume that the electors so far misconceived the force of the amendments proposed as to regard them as effecting only the change in the year of the convening of the general assembly, we might also assume with respect to the later instance that they protested against the extension of the activities of the codifier into the field of constitutional law by so amending the constitution as to mean what it already means. But it is more decorous and consistent with proper interpretation to assume that whatever may have been the state of mind of those who framed the amendments in both instances, the electors comprehended that the proposed change in Section 25 of Article II would, if adopted, abrogate the provision for biennial sessions. This must be so for the amendment submitted upon both occasions was as follows: “Section 25. The regular session of each general assembly shall commence on the first Monday in January next after it is chosen.” The electors, therefore, had no opportunity to change the time fixed by the original section for the beginning of the session without at the same time abrogating its requirement respecting biennial sessions. We have heard and read with sympathetic interest the presentation by counsel for the defendant of impressive reasons for believing that the framers of the constitution were insistent that sessions of the general assembly should be biennial, and we agree *440 with them that the signs of the times do not indicate a change of opinion upon that subject. .These •considerations perhaps suggest the real reasons why the amendments failed on the two occasions referred to. They do not incline us to' an interpretation of the constitution which would involve the alternative that either the required regular session of the general assembly shall not be held at all, or that there should be annual sessions, one called for the first Monday of January in the odd numbered years to perform the duties imposed upon it with reference to the election of executive officers in the preceding November, and the other a year later to give perpetual effect to a date whose substantial purpose was served when the constitution was put into operation sixty years ago.
We conclude that Section 35 of the General Code, pursuant to which the general assembly met in regular session on the first Monday of January last, is constitutional, that the session is regular and the appropriation act referred to is valid.

Peremptory writ awarded.

Davis, Price, Johnson and Donaeiue, JJ., concur.